United States District Court

For the Northern District of California

1

2

3        IN THE UNITED STATES DISTRICT COURT

4      FOR THE NORTHERN DISTRICT OF CALIFORNIA

5   TROYCE T. BRANINBURG,        )   No. C 08-4562 CW (PR)
                                 )
6              Plaintiff,        )   ORDER GRANTING DEFENDANTS'
                                 )   MOTIONS FOR SUMMARY JUDGMENT
7        v.                      )
                                 )   (Docket nos. 24, 25, 26)
8   MONTEREY COUNTY, et al.,     )
                                 )
9              Defendants.       )
    _____)

10                         INTRODUCTION

11      Plaintiff Troyce T. Braninburg, currently incarcerated at

12  Coalinga State Hospital, brought this pro se civil rights case

13  under 42 U.S.C. § 1983 alleging constitutional violations stemming

14  from being housed at the Monterey County Jail (MCJ) as a pending

15  "Sexually Violent Predator."  Plaintiff seeks monetary relief.

16      Plaintiff is a pre-operation, transgender individual.  In its

17  previous Orders, the Court referred to Plaintiff using male

18  pronouns.  Plaintiff refers to herself using female pronouns in her

19  filings; therefore, the Court will do so in this Order.

20      The Court conducted an initial screening of the complaint

21  pursuant to 28 U.S.C. § 1915A(a).  Plaintiff asserted that jail

22  officials and medical staff at the MCJ were deliberately

23  indifferent to her medical needs.  The following background was

24  taken from the Court's July 1, 2009 Order:

25      According to the allegations in the complaint, between
        May 1, 2007 and December 10, 2007, Plaintiff was held as
26      a civil detainee at the Monterey County Jail.  (Compl. at
        3.)  During this time, Plaintiff alleges he did not
27      receive HIV/AIDS medications for four months, and he
        spent "the entire time in a unsanitary cell with little
28

or no medical attention." (Id.) Plaintiff alleges he
"became ill and built up resistance to current . . .
meds . . . [and] deteriorated medically-mentally." (Id.)
Plaintiff also alleges that he filed numerous grievances,
which were never addressed or returned. FN. (Compl. at
1.)

Plaintiff names the "Monterey County District Attorney's
Office" and the "Monterey County Jail Staff as
correctional and medical staff" as defendants in this
case.  He seeks monetary damages.

FN. Plaintiff contends he has filed administrative
appeals (grievances) on this issue which have never been
answered.  It thus appears he has not exhausted his
administrative remedies as required by 42 U.S.C.
§ 1997e(a).  If the allegations that his appeals have not
been answered are true, however, it may be that
administrative remedies are not "available" within the
meaning of the statute.  This is an issue better resolved
at a later stage of the case.

(July 1, 2009 Order at 1-2 (footnote in original).)  The Court

found that Plaintiff's allegations presented a cognizable

deliberate indifference claim.  However, the Court determined that

she failed to allege facts identifying which individuals violated

her constitutional rights.  (July 1, 2009 Order at 7.)  Plaintiff

named "Monterey County Jail Staff"; however, she failed to name any

specific defendants.  The Court granted Plaintiff thirty days to

file an amended complaint to cure the pleading deficiencies, or to

suffer dismissal of the action.

On August 4, 2009, Plaintiff filed a first amended complaint

(FAC).  She named the following Defendants: Monterey County Sheriff

Mike Kanalakis; MCJ Commander Barrera; and MCJ Director of Medical

Services Taylor Fithian, M.D.  She also named the following as Doe

defendants: three MCJ sergeants, twelve MCJ deputies; and MCJ

Isolation Unit supervisors and deputies.

On January 25, 2010, the Court issued its Order of Service.

The Court found that Plaintiff stated a cognizable claim for

deliberate indifference to her serious medical needs against Defendant Fithian.  Plaintiff also stated cognizable supervisory liability claims against Defendants Kanalakis and Barrera as well as cognizable Fourth and Fourteenth Amendment claims against Defendants Kanalakis, Barrera and Fithian.  Plaintiff's claims against the Doe defendants were dismissed without prejudice.

On June 23, 2010, Defendant Fithian filed his motion for summary judgment.  On June 24, 2010, Defendants Kanalakis and Barrera filed their motion for summary judgment.  In their motions for summary judgment, Defendants did not raise Plaintiff's failure to exhaust her administrative remedies; therefore, the Court need not consider this issue.

In an Order dated July 27, 2010, the Court granted Plaintiff an extension of time to file her oppositions to Defendants' motions for summary judgment.

On September 1, 2010, Plaintiff filed her oppositions.[1]

On September 10, 2010 and September 14, 2010, Defendant Fithian and Defendants Kanalakis and Barrera respectively filed their replies to Plaintiff's oppositions.

For reasons discussed below, the Court GRANTS in part and DENIES in part Defendants' motions for summary judgment.

---

[1] In Plaintiff's opposition to Defendant Kanalakis and Barrera's motion for summary judgment, she requests more time to conduct discovery.  Plaintiff has already filed her oppositions to Defendants' motions for summary judgment.  Defendants state that they were "not aware that Plaintiff conducted any discovery, and Plaintiff has not indicated in her opposition that she has any specific plans to do so in the future."  (Defs. Kanalakis and Barrera Reply at 2.)  Furthermore, Plaintiff fails to describe which documents are sought or how "additional discovery would have revealed specific facts precluding summary judgment."  See Tatum v. City and County of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006).  Therefore, the Court DENIES Plaintiff's request for a continuance for discovery.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

BACKGROUND

I.   Medical Care

Plaintiff was transferred from the California Men's Colony to MCJ in May, 2007.  (Def. Fithian Mot. Summ. J., Ex. D-7, California Forensic Medical Group (CFMG) Records.)  Plaintiff's medical records describing her prior medical treatment were transferred with her to MCJ.  (Id., Ex. D, CFMG Records.)  She also brought medications with her to MCJ.  An Intake Health Screening and Intake Triage Assessment test found that Plaintiff had Hepatitis C, HIV/AIDS, psychiatric problems and prostate cancer.  (Id., Ex. D-1, CFMG Records.)

According to her FAC, Plaintiff did not receive medical treatment or prescribed medication for over four months.  (FAC at 3.)  She claims that "this deliberate indifference will shorten [her] life expectancy."  (Id.)  Plaintiff adds that she also suffers from "Hep-C, Neuropathy, cancer, etc."  (Id., Attach. "Claim 4 of 4.")

Plaintiff claims that the conditions of confinement caused her "to become extremely depressed, and very suicidal."  (Id., Attach. "Claim 3 of 4.")  She also "experienced extreme physical discomfort and insomnia."  (Id.)  Plaintiff claims that she lost forty pounds while housed at MCJ, "caused by a combination of lack of food, lack of proper medical treatment, depression, insomnia, and mental exhaustion."  (Id.)

Plaintiff claims that despite being in solitary confinement, "no mental health care or treatment was provided or offered." (Id., Attach. "Relief 1 of 3.")

On May 3, 2007, Plaintiff was examined by Susana Fraser, P.A.

4

United States District Court
For the Northern District of California

(Def. Fithian Mot. Summ. J., Ex. F-1, CFMG Records.)  Plaintiff claims she was taking various medications, which were verbally approved by Dr. Garcia, her previous physician.  (Id.)  When Plaintiff arrived at MCJ, she did not have any HIV medication. (Id.)  Plaintiff's HIV medications had been discontinued by the medical staff at the California Men's Colony because she had to undergo neck surgery; however, they were supposed to have been prescribed again post-surgery.  (Id.)  P.A. Fraser told Plaintiff that she would request Plaintiff's medical records relating to HIV medications.  (Id.)

On May 16, 2007, Defendant Fithian prescribed six medications for Plaintiff's conditions after a Jail Re-Admission Health Appraisal was performed.  (Id., Ex. D-9, CFMG Records.)

On May 29, 2007, the director of nurses advised MCJ that Plaintiff had not been on any HIV medications since June, 2006. (Id., Ex. F-2, CFMG Records.)  P.A. Fraser decided to refer Plaintiff to the Natividad Immunology Division Outpatient (NIDO) clinic for a new evaluation relating to her HIV positive condition. (Id.)

On June 20, 2007, Plaintiff was seen by Dr. Pauda of the NIDO clinic.  (Id., Ex. L, CFMG Records.)  Dr. Pauda ordered laboratory tests.  (Id.)  On July 10, 2007, Plaintiff was scheduled for a follow-up appointment with Dr. Pauda and a psychiatrist, Dr. D. Guiroy, at the NIDO clinic.  (Id., Ex. J-1 - J-2, CFMG Records.)

Plaintiff was seen by the Marriage and Family Therapist on June 22, 2007, who referred Plaintiff to Defendant Fithian.  (Id., Ex. F-5, CFMG Records.)  On June 25, 2007, Defendant Fithian

United States District Court
For the Northern District of California

increased the dosage of Plaintiff's Wellbutrin prescription to treat her depression.  (Id.)  Plaintiff was otherwise stable. (Id.)

On June 27, 2007, Plaintiff's public defender, Erin Wennerholm, Esq., sent a letter expressing concern regarding Plaintiff's medical and psychiatric treatment.  (Id., Ex. J-3, CFMG Records.)  Ms. Wennerholm discussed Plaintiff's request for an increased dosage of her Wellbutrin prescription.  (Id.)  Plaintiff requested an additional bagged lunch or breakfast due to rapid weight loss, and also requested an extra pillow and blanket for comfort to alleviate pain caused by recent back surgery.  (Id.) Plaintiff asked for disposable razors because of her sensitive skin.  (Id.)  Ms. Wennerholm indicated that later on she was informed that Plaintiff's Wellbutrin prescription had in fact been increased to the recommended dosage, and that Plaintiff's medical concerns were being addressed.  (Id.)

On June 27, 2007, Defendant Fithian ordered Plaintiff an extra sack lunch and blanket.  (Id., Ex. J-4 - J-5, CFMG Records.)

On July 10, 2007, Defendant Fithian ordered Plaintiff an additional sack breakfast.  (Id., Ex. J-6, CFMG Records.)  That same day, Plaintiff called Dr. Finnberg asking to discontinue her Wellbutrin prescription because of concerns relating to her liver disorder, and Defendant Fithian recommended that Plaintiff's request be granted.  (Id., Ex. F-8, CFMG Records.)

On August 24, 2007, a MCJ health care provider denied Plaintiff's request for a razor due to Plaintiff's history of suicide threats.  (Id., Ex. J-16, CFMG Records.)  Plaintiff was

6

also told that she would be given her Neurontin medication three times a day.  (<u>Id.</u>)

Plaintiff was then seen at the NIDO clinic regarding her sensitive skin problems, lab tests and medications, as well as evaluations by Dr. Pauda, Dr. Guiroy and Dr. Tobber for Hepatitis C treatment.  (<u>Id.</u>, Ex. J-19 - J-24, CFMG Records.)  Plaintiff was then given disposable razors due to her sensitive skin and prescribed various medications.  (<u>Id.</u>)

On September 11, 2007, Defendant Fithian renewed Plaintiff's Wellbutrin prescription.  (<u>Id.</u>, Ex. F-16, CFMG Records.)

On October 3, 2007, Plaintiff again asked to discontinue her Wellbutrin prescription.  (<u>Id.</u>, Ex. J-28, CFMG Records.)  Defendant Fithian ordered that Plaintiff's Wellbutrin prescription be tapered off during the following weeks.  (<u>Id.</u>)

On October 9, 2007, Defendant Fithian noted that Plaintiff's Wellbutrin prescription was being tapered off, as requested, and would soon be entirely discontinued.  (<u>Id.</u>, Ex. F-18, CFMG Records.)

On October 17, 2007, Dr. Guiroy examined Plaintiff and recommended Wellbutrin once again.  (<u>Id.</u>, Ex. J-29 - J-30, CFMG Records.)  Plaintiff was scheduled for a follow-up appointment with Dr. Pauda and Dr. Guiroy.  (<u>Id.</u>)

On October 18, 2007, the physicians at NIDO clinic examined Plaintiff and recommended that Wellbutrin be prescribed again, to which Plaintiff agreed.  (<u>Id.</u>, Ex. F-19, CFMG Records.)  The next day, Defendant Fithian noted that Plaintiff's Wellbutrin prescription had been restarted.  (<u>Id.</u>, Ex. F-20, CFMG Records.)

On November 20, 2007, Plaintiff refused to visit physicians at the NIDO clinic for her follow-up appointment. (<u>Id.</u>, Ex. J-35, CFMG Records.)

On November 29, 2007, Defendant Fithian noted that Plaintiff's Wellbutrin prescription was reordered. (<u>Id.</u>, Ex. F-21, CFMG Records.)

On December 5, 2007, Plaintiff was last seen by medical staff before he was transferred out of MCJ on December 10, 2007. (<u>Id.</u>, Exs. E-13 & G-14, CFMG Records.)

II.  Strip Search and Conditions of Confinement

Plaintiff alleges that she was "illegally stripped [sic] search[ed] upon entering MCJ." (FAC, Attach. "Claim 4 of 4.") She adds that, because this strip search was conducted in the presence of inmates, it was "humiliating and degrading." (<u>Id.</u>) Plaintiff argues that she should not have been subjected to a strip search, because it is "designed for criminal process misdemeanants [sic] who might be concealing a weapon or have drugs in their possession." (<u>Id.</u>)

Plaintiff alleges that she was held in "solitary confinement" for the entire duration of her stay in MCJ, and was "only allowed out of her cell a maximum of 3 hours per week (1 per day, 3x week)." (<u>Id.</u>, Attach. "Claim 1 of 4.") Plaintiff claims that her cell was "filthy, infested with vermin, had poor plumbing which often backed up leaving raw sewage." (<u>Id.</u>)

Plaintiff claims that she was not given adequate bedding, and was placed in a "cold and dank" cell that caused her to suffer "insomnia brought on by extreme physical discomfort." (<u>Id.</u>)

8

United States District Court
For the Northern District of California

Plaintiff asserts that she was "routinely not given meals, particularly lunch." (Id., Attach. "Claim 2 of 4.")  Plaintiff claims she was given a used razor to shave with, which "may well have exposed other persons to Plaintiff's HIV, and exposed Plaintiff to HIV, or other blood borne maladies from other persons." (Id.)

Plaintiff claims that she was "routinely placed in mechanical restraints" during transports. (Id.)  Although Plaintiff was kept physically separated from the "criminal process prisoners" and placed in a compartment with a metal mesh grating, she claims that "the criminal process prisoners routinely expectorated and urinated on Plaintiff because of her 'involuntary civil commitment status.'" (Id.)  Plaintiff claims that Defendants "made [her] status known to the criminal process prisoners," which "led to Plaintiff being singled out for abusive treatment at the hands of the criminal process prisoners, whom she never should have been transported with in the first place." (Id.)

Plaintiff asserts that she had "extremely limited access to telephones, could only place non-confidential monitered [sic] calls" and "could not receive calls.  Also, visits were severely limited to 2 days of non-contact visits per week." (Id., Attach. "Claim 3 of 4.")  Plaintiff argues that "mental health patients in California are entitled to, as a matter of statutory law, reasonable access to telephone to both make and receive confidential calls." (Id.)

Finally, Plaintiff asserts that she was denied equal protection and due process.  Specifically, Plaintiff claims that

"the conditions of confinement in MCJ and the actions of the Defendants were punitive in nature." (<u>Id.</u>)  Plaintiff contends that she was "entitled to more considerate conditions of confinement than those of prisoners whose conditions of confinement are designed to punish." (<u>Id.</u>)  Plaintiff also claims that she was denied equal protection in the form of rights codified in the Lanterman-Petris-Short (LPS) Act (California Welfare & Institution Code §§ 5000, et seq.) which were created to protect mental health patients in California. (<u>Id.</u>, Attach. "Claim 4 of 4.")

DISCUSSION

I.  Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on

10

**United States District Court**
For the Northern District of California

personal knowledge and sets forth specific facts admissible in evidence.  <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.  The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  <u>Celotex</u>, 477 U.S. at 323.

II.  Legal Claims

A.    Deliberate Indifference to Medical Needs and Supervisory Liability Claims

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); <u>Jones v. Johnson</u>, 781 F.2d

769, 771 (9th Cir. 1986).  The analysis of a claim of deliberate indifference to serious medical needs involves an examination of two elements: (1) a prisoner's serious medical needs and (2) a deliberately indifferent response by the defendants to those needs. McGuckin, 974 F.2d at 1059.  A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." Id. (citing Estelle, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however.  Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights. McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")).  However, the existence of serious harm tends to support an inmate's deliberate indifference claims.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1060).

Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. See McGuckin, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).

Plaintiff claims that Defendant Fithian failed to provide her with medical treatment for her HIV for up to four months.  (FAC at 3.)  She also claims that she was never provided or offered mental health treatment.  (FAC, Attach. "Relief 1 of 3.")

That Plaintiff has serious medical needs is not in dispute. However, Plaintiff's claim that Defendant Fithian failed to provide

United States District Court
For the Northern District of California

1   any or adequate medical treatment does not support a claim of
2   deliberate indifference.  To the contrary, the record shows that
3   Defendant Fithian provided adequate care to Plaintiff.  (Def.
4   Fithian Mot. Summ. J., CMFG Records.)  Defendant Fithian, as well as
5   outside physicians, examined Plaintiff on multiple occasions and
6   gave her adequate treatment for her medical issues.  (<u>Id.</u>)  When
7   Plaintiff first entered MCJ and was given a Jail Re-Admission Health
8   Appraisal, Defendant Fithian noted that Plaintiff had Hepatitis C,
9   HIV/AIDS, psychiatric problems and prostate cancer.  (<u>Id.</u>, Ex. D-1,
10  CMFG Records.)  Defendant Fithian prescribed six different
11  medications for Plaintiff's conditions.  (<u>Id.</u>, Ex. D-9, CMFG
12  Records.)  Defendant Fithian increased the dosage of Plaintiff's
13  Wellbutrin prescription to treat her depression.  (<u>Id.</u>, Ex. F-5,
14  CMFG Records.)  Plaintiff's complaints were not ignored by Defendant
15  Fithian, who continued to give her follow-up care according to her
16  medical needs.  The record shows that Defendant Fithian ordered
17  Plaintiff an additional sack breakfast and lunch, as well as an
18  extra blanket.  (<u>Id.</u>, Ex. J-6, CMFG Records.)  When Plaintiff
19  requested that her Wellbutrin prescription be discontinued,
20  Defendant Fithian ordered that the medication be tapered off and
21  eventually stopped.  (<u>Id.</u>, Ex. J-28, CMFG Records.)  Defendant
22  Fithian renewed Plaintiff's Wellbutrin prescription after Plaintiff
23  underwent lab tests at the NIDO clinic and agreed to take
24  Wellbutrin.  (<u>Id.</u>, Ex. F-19 - F-20, CMFG Records.)  Therefore, the
25  Court finds that Defendant Fithian was not deliberately indifferent
26  because he did not deny or delay treatment of Plaintiff's serious
27  medical needs.  <u>Cf.</u> <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314

14

United States District Court
For the Northern District of California

(9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and, without examination, prescribed contraindicated sedatives).

Accordingly, Defendant Fithian is entitled to summary judgment on the deliberate indifference claim as a matter of law. See Celotex, 477 U.S. at 323.

Plaintiff sues Defendants Kanalakis and Barrera in their supervisorial capacity. Specifically, Plaintiff claims Defendants Kanalakis and Barrera failed to "adequately train and supervise [their] subordinate deputies who clearly violated Plaintiff's rights of due process and equal protection, and who were deliberately indifferent to Plaintiff's medical needs." (FAC, Attach. "Relief 1 of 3.") The Court has not found that any of Defendants Kanalakis's and Barrera's subordinates were deliberately indifferent to Plaintiff's medical needs, or violated any of her constitutional rights.

Accordingly, Defendants Kanalakis and Barrera are entitled to summary judgment as a matter of law as to this claim as well. See Celotex, 477 U.S. at 323.

B.   Legal Claims Relating to Conditions of Confinement

1.   Due Process Claim

Plaintiff claims that a variety of the conditions of her confinement at MCJ between May, 2007 and December, 2007, violated her constitutional rights as a civil detainee under the SVPA.

There is no per se prohibition on housing SVPs in facilities, such as county jails, where criminal detainees or convicts are also

United States District Court
For the Northern District of California

housed.  The Ninth Circuit, in <u>Jones v. Blanas</u>, 393 F.3d 918 (9th Cir. 2004), declined to hold that SVPs may not, consistent with the Constitution, be held in jail facilities, finding instead that the dispositive question when assessing an SVP's constitutional challenge to his or her conditions of confinement is whether those conditions are punitive.  <u>See</u> <u>Jones</u>, 393 F.3d at 932.  A restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in alternative and less harsh methods.  <u>Id.</u> at 933-34.  The conditions and duration of confinement must "bear some reasonable relation to legitimate, non-punitive government interests." <u>Hydrick v. Hunter</u>, 500 F.3d 978, 997 (9th Cir. 2007) (internal quotation and citation omitted).  Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.  <u>Jones</u>, 393 F.3d at 932.

Further, individuals who have not yet been civilly committed at trial under the SVPA are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime.  <u>Foster v. Runnels</u>, 554 F.3d 807, 931-32 (9th Cir. 2009).  For such individuals, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.  <u>Id.</u> at 934; <u>cf.</u> <u>Hydrick</u>, 500 F.3d at 997 (after trial and civil commitment

16

under SVPA, presumption switches, and conditions of confinement are presumed non-punitive unless proven otherwise).  The government must be afforded an opportunity to rebut this presumption by showing legitimate, non-punitive interests justifying the conditions of detainees awaiting SVPA proceedings, and by showing that the restrictions imposed on such detainees were not excessive in relation to these interests.  See Jones, 393 F.3d at 934-35.

During the time period at issue in this case, Plaintiff was housed at MCJ while awaiting adjudication on her civil commitment proceedings, and was housed in conditions similar to those of pretrial criminal detainees.  Thus, Defendants are required to rebut the Jones presumption that the conditions of confinement at MCJ were punitive.  Defendants have submitted declarations and Plaintiff's jail records as evidence in support of their motions for summary judgment.  Plaintiff has not submitted evidence in opposition, although the Court considers her sworn and verified first amended complaint as an opposing affidavit to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder, 55 F.3d at 460 & nn.10-11 (allowing verified complaint to be considered opposing affidavit under Rule 56 to the extent it sets forth specific facts admissible into evidence).

Plaintiff claims that Defendants violated her equal protection and due process rights by subjecting her to conditions of confinement that were punitive in nature.  (FAC, Attach. "Claim 3 of 4.")  Defendants Kanalakis and Barrera argue that they had legitimate, non-punitive interests justifying how they housed

17

United States District Court
For the Northern District of California

Plaintiff, and that the restrictions imposed on Plaintiff were not excessive in relation to those interests.  (Defs. Kanalakis and Barrera Mot. Summ. J. at 2.)  Moreover, Defendant Fithian argues that the decisions pertaining to Plaintiff's housing conditions were "reserved for custodial staff in the day-to-day management of an inmate's living condition."  (Def. Fithian Mot. Summ. J. at 14.)

Plaintiff claims that she was held in solitary confinement for her entire stay at MCJ.  (FAC at 3.)  She claims that her complaints about the unsanitary conditions of her cell were ignored, and that she refused less restrictive placement "to protect herself from harm at the hands of other inmates."  (Opp'n to Defs. Kanalakis and Barrera Mot. for Summ. J. at 17.)  The undisputed evidence demonstrates that Defendants made "several attempts to expand [Plaintiff's] privileges and relax her confinement, given available resources and space."  (Hunton Decl. ¶¶ 6-14.)  Although she was placed in isolation, Plaintiff was authorized daily access to the day room in addition to three hours of outdoor recreation each week. (Id. ¶ 6.)  Plaintiff was housed separately from criminal defendants as a safety precaution, and she also had greater access to staff and medical services as well as less competition for time in the day room.  (Id. ¶ 8.)  In regards to her claim of inadequate bedding, Plaintiff's sheets were changed each week and blankets were changed each quarter.  (Id. ¶ 9.)  Plaintiff was also ordered an extra blanket by Defendant Fithian.  (Def. Fithian Mot. Summ. J., Ex. J-4 - J-5, CMFG Records.)  Efforts were made to ensure the sanitation of Plaintiff's cell.  (Mihu Decl. ¶ 6-7.)  For example, cleaning supplies were routinely provided to inmates because they were

18

United States District Court
For the Northern District of California

expected to clean their own rooms. (<u>Id.</u>) Moreover, three separate repairs took place, addressing flooding caused by a broken shower and leaking toilet. (<u>Id.</u>)

Plaintiff also claims that she was routinely denied meals, particularly lunch. (FAC, Attach. "Claim 2 of 4.") Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. <u>Foster v. Runnels</u>, 554 F.3d 807, 812-13 (9th Cir. 2009) (denial of sixteen meals over twenty-three days was "a sufficiently serious deprivation because food is one of life's basic necessities"). However, the evidence shows that Plaintiff was assigned an extra sack breakfast and lunch. (Def. Fithian Mot. Summ. J., Ex. J-6, CFMG Records.) Moreover, the record shows that Plaintiff refused her breakfast on six occasions, and refused her lunch on one occasion. (Hunton Decl. ¶ 10.) Plaintiff was not deprived of any meal. (<u>Id.</u>)

Therefore, the Court finds the evidence presented by Defendants sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in MCJ were punitive. Plaintiff has failed to carry her burden of demonstrating a genuine issue of material fact. The Court finds no merit to Plaintiff's conclusory argument that, as a matter of law, Defendants violated her constitutional rights because she suffered conditions of confinement that were intended to punish.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim.

19

United States District Court
For the Northern District of California

2.   Equal Protection Claim

Plaintiff claims that Defendants failed to provide her with the protections afforded to persons subject to other civil commitments, such as other mental health patients. (FAC, Attach. "Claim 4 of 4.") "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted).

Plaintiff asserts that Defendants made her "involuntary commitment status" known to the criminal process prisoners, thus causing her to be singled out and abused. (FAC, Attach. "Claim 2 of 4.") Defendants Kanalakis and Barrera argue that each civil detainee is clothed in a white jump suit as an indicator to other inmates and jail officials of his or her status as a civil detainee, and as a safety precaution to identify and separate the civil detainee from other inmates. (Def. Kanalakis and Barrera Mot. Summ. J. at 12.) Defendant Fithian argues that he did not provide any information to prisoners concerning Plaintiff and her involuntary commitment status. (Def. Fithian Mot. Summ. J. at 14.) The LPS Act sets forth the rights applicable to persons who have been involuntarily detained in a mental health treatment facility for evaluation or treatment. The Court finds unavailing Plaintiff's argument that she was treated differently from individuals civilly detained pursuant to the LPS Act. The LPS Act by its terms applies only to those who are involuntarily detained in a mental health

20

facility for evaluation or treatment, and does not apply to individuals such as Plaintiff, who are involuntarily confined because they are facing civil commitment proceedings under the SVPA.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

### 3.   Right to Privacy Claim

Plaintiff claims that her right to privacy under the Fourteenth Amendment was violated because she was not allowed sufficient privacy while meeting with visitors and using the telephone.  (FAC, Attach. "Claim 3 of 4.")  Any right to privacy in a county jail is necessarily diminished by the government's legitimate interest in securing and effectively managing the jail.  See Bell v. Wolfish, 441 U.S. 520, 559 (1979).  To test the reasonableness of intrusions into privacy in the jail setting, the Court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Id at 559.  Matters such as the introduction of contraband, plans for escape or insubordination, and conflict among inmates or between inmates and staff could be discussed in confidential telephone calls or during confidential visits.  Therefore, Defendants' restrictions on these matters are relatively routine precautions related to the safety of the staff and inmates and the security of the jail.  See, e.g., Block v. Rutherford, 468 U.S. 576, 588 (1984) (deferring to jail administrators' discretion in determination that contact visits would jeopardize safety of institution).  Additionally, Defendants claim Plaintiff refused use

21

United States District Court
For the Northern District of California

of the day room and access to the telephone fifty-seven percent of the time it was available.  (Hunton Decl. ¶ 12.)

There is no evidence in the record that the alleged restrictions on Plaintiff's telephone calls and visits were unrelated to the legitimate government interest in the safety of MCJ.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's right to privacy claim.

> 4.   Fourth and Fourteenth Amendments

Plaintiff claims that she was subjected to a strip search upon arrival at MCJ, in violation of her Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.  (FAC, Attach. "Claim 2-4 of 4.")

The Fourth Amendment right to be secure against unreasonable searches and seizures extends to SVPs.  Hydrick, 500 F.3d at 993. The reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry.  Id.

Here, the search at issue involved a strip search upon arrival at a jail.  The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails.  Bull v. San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc).  To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests.  See Bull, 595 F.3d at 973.  A strip search that includes a visual body cavity search complies with the requirements of the Fourth Amendment so long as it

22

is reasonable. <u>Bell</u>, 441 U.S. at 559.  In <u>Bell</u>, the Supreme Court evaluated the constitutionality of a blanket policy allowing visual body cavity searches, without regard to individualized suspicion, of all inmates at the county jail, including pretrial detainees, after every contact visit with a person from outside the institution.  <u>Id.</u> at 559-60.  The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons, and other contraband into the institution presented significant and legitimate security interests.  <u>Id.</u>  Similarly, the Ninth Circuit has held that the rights of arrestees placed in custodial housing with the general jail population are not violated by a policy or practice of strip searching each one of them as part of the booking process, provided that the searches are no more intrusive on privacy interests than those upheld in <u>Bell</u>, and the searches are not conducted in an abusive manner.  <u>Bull</u>, 595 F.3d at 980-82 (San Francisco's policy requiring strip searches for all arrestees classified for custodial housing in the general population was facially reasonable under the Fourth Amendment, notwithstanding the lack of individualized reasonable suspicion as to the individuals searched).

Defendants claim that Plaintiff was not strip searched because there is no record of a search and jail policy requires that such searches be recorded and documented.  (Defs. Kanalakis and Barrera Mot. Summ. J. at 13.)  Moreover, Plaintiff did not grieve the matter and "County Jail rules for strip searches require that the privacy of the inmate or detainee be maintained and that the search be reported."  (<u>Id.</u>)  However, Plaintiff maintains that the strip search did occur, and "whether it was recorded or not, it is common

23

United States District Court
For the Northern District of California

for County Jail to perform strip searches of persons entering the facility from the community or other facilities." (Opp'n to Defs. Kanalakis and Barrera Mot. Summ. J. at 17.) Even if Plaintiff was strip searched, she does not claim that the search was unreasonable or conducted in an abusive manner. She only alleges that she was strip searched upon arriving at MCJ. As mentioned above, the Ninth Circuit has upheld the policy or practice of strip searching inmates as part of the booking process so long as they are reasonable and not conducted in an abusive manner. <u>Bull</u>, 595 F.3d at 980-82. Therefore, there is no evidence that the strip search conducted here violated her Fourth and Fourteenth Amendment rights.

Plaintiff further alleges that she was placed in mechanical restraints during transports, also in violation of her Fourth and Fourteenth Amendment rights. (FAC, Attach. "Claim 2-4 of 4.") As an SVP, Plaintiff had a right to conditions of confinement that were not punitive, and she also had a substantive liberty interest in freedom from unnecessary bodily restraint. <u>Jones</u>, 393 F.3d at 933; <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982). However, the use of mechanical restraints while escorting Plaintiff when she was transported around the jail was reasonably related to Plaintiff's safety. Putting mechanical restraints on Plaintiff would reasonably prevent Plaintiff from separating herself from the guards escorting her and thereby endangering herself at the hands of other inmates. Moreover, according to jail officials, it was routine to restrain all detained persons with leg-irons and belly chains when being transported to court. (Pineda Decl. ¶ 5.) Therefore, the use of mechanical restraints while escorting her did not violate her Fourth

and Fourteenth Amendment rights.

Even if Plaintiff had alleged violations of her Fourth and Fourteenth Amendment rights, there is no evidence that Defendants Kanalakis and Barrera, who are being sued in their supervisorial capacity, "participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  Nor has Plaintiff made such a claim.  Furthermore, Plaintiff fails to allege that Defendant Fithian, who was one of her physicians, participated in any way in the alleged strip search or in the use of mechanical restraints. Therefore, the Court finds no merit to her conclusory argument that these Defendants violated her Fourth and Fourteenth Amendment rights.

Accordingly, Defendants Kanalakis, Barrera and Fithian are entitled to summary judgment on her claims relating to the alleged strip search and to the use of mechanical restraints.

CONCLUSION

For the foregoing reasons,

Defendants' motions for summary judgment (docket nos. 24, 25, 26) are GRANTED.

The Clerk of the Court shall enter judgment in favor of Defendants in accordance with this Order, terminate all pending motions, and close the case.  Each party shall bear his own costs.

This Order terminates Docket nos. 24, 25 and 26.

IT IS SO ORDERED.

DATED:  2/23/2011

_____
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

TROYCE T. BRAININBURG,

        Plaintiff,

  v.

MONTEREY COUNTY et al,

        Defendant.

_____/

Case Number: CV08-04562 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 23, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Troyce Tabatha Braninburg 754-2
Coalinga State Hospital
24511 Jayne Avenue
P.O. Box 5003
Coalinga, CA 93210

Dated: February 23, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

**United States District Court**
For the Northern District of California

26